UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| EDGAR RIVEROS-SANCHEZ and <br> MARIA RIVEROS-SANCHEZ, <br>           Plaintiffs, <br><br> v. <br><br> CITY OF EASTON, JOHN BAST, and <br> JOHN H. PRICE, <br>           Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | No. 5:19-cv-0545 |

**O P I N I O N**
Defendants' Motion to Dismiss for Failure to State a Claim—GRANTED

**Joseph F. Leeson, Jr.**                                                                        **February 4, 2020**
**United States District Judge**

**I.     INTRODUCTION**

      This action was commenced by *pro se* Plaintiffs, husband and wife Edgar Riveros-Sanchez and Maria Riveros-Sanchez ("Plaintiffs"), against the City of Easton, Pennsylvania ("the City") and its employees (collectively, "Defendants") for alleged civil rights and state law violations in connection with rental property owned by the Plaintiffs. On July 25, 2019, this Court issued an Opinion and Order[1] granting Defendants' motion to dismiss Plaintiffs' initial Complaint. The Court granted Plaintiffs leave to file an Amended Complaint, which they did on August 23, 2019. Shortly thereafter, Defendants moved to dismiss the Amended Complaint, and that motion—resting on largely the same grounds as their initial motion—is now before the Court. For the reasons set forth below, Defendants' motion to dismiss the Amended Complaint is granted, and the Amended Complaint is dismissed.

---

[1]    The Court writes for the parties and assumes their familiarity with its Opinion and Order.

## II. BACKGROUND

### A. Facts Alleged in the Amended Complaint[2]

Plaintiffs owned a building containing rental apartment units located at "723 Washington St." in Easton, Pennsylvania. Plaintiffs' Amended Complaint, ECF No. 17 ("Am. Compl."), Count III ¶ A.[3] On August 25, 2014, Plaintiffs met with City of Easton Fire Inspector Terry Foulk and other City officials to discuss installation of a fire alarm system at Plaintiffs' property. *Id*. Around this time, Plaintiffs were also engaged in Chapter 13 bankruptcy proceedings. *Id*.[4] As a result of the August 25, 2014 meeting, Plaintiffs obtained "an oral agreement with Inspector Foulk that two months after the Bankruptcy Court Judge gave Plaintiffs their Final Notice of Bankruptcy discharge . . . [they] would have the fire alarm purchase process in motion." *Id*. Plaintiffs state that "[o]ne of the reasons" they had not installed a fire alarm system earlier was that they "had to make court ordered Chapter 13 bankruptcy payments" and they "didn't have the $5,000" required to install the system. *Id*. As a result, "Plaintiffs had to keep negotiating for a

---

[2] These facts are drawn from the Amended Complaint and are accepted as true, with all reasonable inferences being drawn in Plaintiffs' favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court is also cognizant that *pro se* pleadings must be "liberally construed." *Odrick v. Scully Co.*, No. CV 17-02566, 2018 WL 6044929, at *2 (E.D. Pa. Nov. 19, 2018). Additionally, the Court's recitation of the allegations of the Amended Complaint generally does not include conclusory assertions or legal contentions, neither of which need be considered by the Court in determining the viability of Plaintiffs' claims. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

[3] The Amended Complaint is organized into paragraphs denoted by capital letters under each of four "Counts," rather than consecutively numbered paragraphs. As such, the Court cites to the Amended Complaint by count "number" (Count I, II, III, or IV) and paragraph "letter" (paragraph A, B, C, D, etc.).

[4] A "Final Decree" in Plaintiffs' bankruptcy proceeding, attached to the Amended Complaint, shows that on July 1, 2015, the estate of Edgar Riveros-Sanchez was "fully administered" and the Bankruptcy Trustee discharged.

fire alarm system at an affordable price" with the company "Tyco Integrated Systems," and this process "took 10 months to complete." *Id*.

Plaintiffs allege that during the time they were negotiating with the fire alarm installer over the price of installation, the City recognized that the apartments in Plaintiffs' building "were up to Residential Rental Inspection [C]ode requirements with 16 smoke detectors and 4 fire extinguishers." Am. Compl., Count III ¶ A. During this time, "Plaintiffs kept in communication with the City Code Inspector Liz Gehman." *Id*. To honor the "spirit" of their oral agreement with Inspector Foulk and "to keep this moving, Plaintiffs gave Paul Philips of Tyco Integrated Systems $3500 within two months after the Bankruptcy Judge granted the Final Notice of the discharge date" as a down payment on installation of a fire alarm system. *Id*. Plaintiffs state that, in fact, they "produced this down payment money within 27 days of the discharge date." *Id*.

At some point in time—and this is the heart of Plaintiffs' grievance—the City "posted the 723 Washington St. property with a CLOSED USE FORBIDDEN SIGN declaring that all occupants must vacate the property in 7 days." Am. Compl., Count III ¶ B. While the allegations do not state exactly when the City posted this sign, photographs attached to the Amended Complaint picture a date of "7/28/15" appearing on the sign. *Id*., Ex. D. Plaintiffs state that before posting the sign, the City "failed to give [them] proper notice . . . as the City did not notify the Plaintiffs' registered Property Manager who had a real estate office located in Easton for 64 years." *Id*., Count III ¶ B. More specifically, Plaintiffs allege that "[t]he City Code office failed to call the phone number for the designated and registered property manager who was listed on the Code Office's own paperwork" and whose address and phone number have been the same "for 64 years." *Id*.

At least one impetus for issuing Plaintiffs a violation and "posting" their property for failure to have an active fire alarm system appears to have been, according to the Amended Complaint, a change in political administrations within the City government. Plaintiffs allege that some members of the "City Code Office," who were part of a new administration, "appeared not to be aware of the full extent of the Plaintiffs' overall situation and constant communications with the City." Am. Compl., Count III ¶ B. Specifically, Plaintiffs aver that they had been in communication with the City "as the fire alarm system price was negotiated, and eventually the fire alarm system was installed in the property, and the alarm system was passed inspection by the City's Code Inspectors!!!!!!!" *Id*.

The Amended Complaint also takes issue with representations made in the "Notice of Violation" letter Plaintiffs received from the new City Fire Marshall in conjunction with the "posting" of their property. Plaintiffs state that "[t]he new Fire Marshall, John Price" stated in this letter[5] that "repeated attempts to get this alarm installed for the past 10 months were ignored." Am. Compl., Count III ¶ B. Plaintiffs claim this allegation "is a complete falsehood as the many printed email communications with the City and copies of different contracts with Tyco show that [they were] not ignoring the need to install a fire alarm." *Id*. They contend that the "numerous exhibits which show communication and contracts with the City's Residential Rental inspector" "prove[ ] false" the Fire Marshall's claim, and "[t]he property was up to the residential rental code all during that time." *Id*., Count III ¶ C. Plaintiffs further state that "whoever gave the order to have the property posted and shuttered was at fault in this matter."

---

[5] Although it is not entirely clear from the allegations alone to what "letter" Plaintiffs are referring, a "Notice of Violation" letter that begins "Dear Property Owner" and contains the admonishing language Plaintiffs cite is attached to the Amended Complaint and labeled "Exhibit E."

*Id*., Count III ¶ B.  They additionally take issue with the fact that the Notice of Violation letter was not dated.  *Id*.

According to the Amended Complaint, the City's failure to give notice before issuing Plaintiffs a violation and posting the above-mentioned sign—which resulted in Plaintiffs' tenants vacating the property—and its pursuing this course of conduct notwithstanding (i) the "agreement" Plaintiffs thought they had with the City and (ii) Plaintiffs' work to get an alarm system installed, constituted a "lack of due process" that "would shock the conscience of any reasonably thinking person!"  Am. Compl., Count III ¶ B.  Plaintiffs moreover state that through its conduct relative to them, the City Code Office "showed bad faith, corruption, intent to interfere with constitutional protected activity, and eventual deprivation of Plaintiffs' property and income flow."  *Id*.  As to the harm that allegedly resulted from the City's conduct, Plaintiffs aver that "[w]ith tenants being forced to vacate by City officials, the building was empty, so Plaintiff[s] should get paid back the money [they] paid for 6 months while the building was empty.  The alarm system was eventually installed as agreed."  *Id*., Count IV ¶ B.

Based on the above allegations, Plaintiffs assert four causes of action:  violation of substantive due process (Count I), violation of procedural due process (Count II), negligence (Count III), and tortious interference with contractual relations (IV).[6]  *See generally*, Am. Compl.  Although they do not specify, the Court assumes that Plaintiffs bring each claim against

---

[6]     The Amended Complaint's allegations are presented under four "counts," with the majority of the allegations appearing under the "negligence" count.  Given the liberal construction to which *pro se* pleadings are entitled, the Court reads the allegations in a general manner, not limiting their application to the specific "count" under which they appear, such that, if the allegations under "negligence" were capable of stating a claim for any of the other three causes of action, the Court would so find.

all Defendants. Additionally, the Amended Complaint requests "60 days to find Counsel if there are further court filings to be made." *Id*. at 3.

B. **Procedural Background**

Plaintiffs filed the initial Complaint in this matter, through counsel, in the Northampton County Court of Common Pleas on August 1, 2018.[7] *See* ECF No. 1. They served the Complaint on Defendants between January 7 and January 16, 2019.[8] *See id*. On February 6, 2019, Defendants removed the matter to this Court. *See id*. Shortly thereafter, on February 13, 2019, Defendants filed their motion to dismiss the Complaint for failure to state a claim. *See* ECF No. 4. While Defendants' motion was being briefed—the Court approved several stipulations for extensions of Plaintiffs' time to respond to the motion—Plaintiffs' counsel moved to be relieved. *See* ECF No. 10. The Court granted counsel's motion on May 3, 2019, and stayed the case for thirty days to allow Plaintiffs to find substitute counsel. *See* ECF No. 11. The Court moreover directed that Plaintiffs had until June 10, 2019, to file their response to the pending motion to dismiss. *See id.*

On June 11, 2019, Plaintiffs filed a "response to counsel's motion to withdraw," setting forth what they understood to be the circumstances behind their disagreement with counsel and requesting a "60-day extension to find new counsel." ECF No. 12. In an Order dated June 19, 2019, the Court denied Plaintiffs' request for a sixty-day extension of time to find new counsel, further stating that if Plaintiffs did not file a response to Defendants' motion to dismiss by July 10, 2019, the motion would be deemed unopposed. *See* ECF No. 13. Plaintiffs filed their

---

[7] The Complaint was filed by attorneys Mathew B. Weisberg and Gary Schafkopf, and named the City, Elizabeth Gehman, and John Bast as Defendants.
[8] According to Defendants' Notice of Removal, after the Complaint was initially filed on August 6, 2018, Plaintiffs did not serve it; however, the Complaint was "reinstated" on January 14, 2019, and subsequently served on Defendants. *See* ECF No. 1.

response in opposition to the motion to dismiss on July 9, 2019 in a *pro se* capacity. *See* ECF No. 15. On July 25, 2019, the Court issued its Opinion and Order granting the motion and allowing Plaintiffs thirty days to file an Amended Complaint.[9] *See* ECF No. 16. Plaintiffs filed their Amended Complaint on August 23, 2019, *see* ECF No. 17, and Defendants filed their motion to dismiss the Amended Complaint on September 5, 2019, *see* ECF No. 18. On September 27, 2019, having received no response from Plaintiffs to Defendants' second motion to dismiss, the Court issued an Order directing that if no response was received by October 17, 2019, the motion would be deemed unopposed. *See* ECF No. 20. Plaintiffs filed their response in opposition to Defendants' motion to dismiss on October 16, 2019. *See* ECF No. 21.

## III. STANDARD OF REVIEW

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the appropriate pleading standard in federal civil actions and set forth a two-step approach to be used when deciding motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. First, district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *Thourot v. Monroe Career & Tech. Inst.*, No. CV 3:14-1779, 2016 WL 6082238, at *2 (M.D. Pa. Oct. 17, 2016) (explaining that "[a] formulaic recitation of the elements of a cause of action" alone will not survive a motion to dismiss). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Second, if a

---

[9] The Court dismissed Plaintiffs' state law claims against the City *with prejudice* on immunity grounds and granted Plaintiffs leave to amend their pleadings as to the remaining claims.

complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This standard, commonly referred as the "plausibility standard," "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556-57). It is only where the "[f]actual allegations . . . raise a right to relief above the speculative level" that the plaintiff has stated a plausible claim.[10] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

The Court's task then, post-*Iqbal*, in deciding a motion to dismiss for failure to state a claim, is to determine whether based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the complaint states a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 679; *Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2 (M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set out sufficient factual matter to show that its claims are facially plausible."). Additionally, because Plaintiffs are proceeding *pro se*, the Court construes their pleadings liberally. *See Morgan v. Scott*, 83 F. Supp. 3d 616, 620 (D. Del. 2015) ("Pro se pleadings, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972))).

---

[10] As the Supreme Court counseled, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679

Lastly, the Court notes that in adjudicating a Rule 12(b)(6) motion, the scope of what may be considered is necessarily constrained: a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[11] *United States v. Gertsman*, No. 15-8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)).

## IV. ANALYSIS

### A. Plaintiffs' State Law Claims

Notwithstanding the Court's prior directives—the Order granting Defendants' motion to dismiss the Complaint provided that Plaintiffs' claims for negligence (as to all Defendants) and tortious interference with contractual relations (as to the City) were dismissed *with prejudice*, *see* ECF No. 16—Plaintiffs re-plead their state law claims in the Amended Complaint. For the reasons discussed at length in its Opinion dismissing the Complaint—which the Court repeats and expands upon below—these claims remain precluded by the Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. §§ 8541, *et seq.* ("the PSTCA").

#### 1. *Negligence*

The PSTCA provides that, with limited exceptions, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. § 8541. Under the statute, "local government agencies are immune from liability for their negligence unless their actions fall within an enumerated exception and would otherwise subject them to liability."

---

[11] Additionally, a court adjudicating a Rule 12(b)(6) motion may take judicial notice of certain undisputed facts. *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

*Tiedeman v. City of Philadelphia*, 732 A.2d 696, 698 (Pa. Commw. Ct. 1999). Here, the City of Easton is a "local agency" as that term is defined, *see* 42 PA. CONS. STAT. § 8501, and none of the statutory exceptions to immunity are at play,[12] *see* 42 PA. CONS. STAT. § 8542(b). It follows that, just as it failed the first time, Plaintiffs' re-pleaded negligence claim against the City must fail again.

The Court also assumes Plaintiffs attempt to plead a claim of negligence as to the individual Defendants John Price and John Bast. Similar to local government agencies, local government officials are shielded by immunity under the PSTCA and may only be sued for damages when their injury-causing acts "constitute[ ] a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550; *see* 42 PA. CONS. STAT. § 8545 (conferring immunity on municipal officials that is generally consistent with the immunity conferred upon municipal entities subject to certain limitations); *Indira v. Groff*, No. CIV.A. 14-4050, 2015 WL 1637151, at *11 (E.D. Pa. Apr. 13, 2015) ("The PSTCA also immunizes individual municipal officials from liability to the same extent as the local agencies that employ them except, however, that tortious individual officials may be held liable for acts amounting to a crime, actual fraud, actual malice, or willful misconduct."). "'Willful misconduct' is more than mere negligence or even gross negligence. For purposes of section 8550 of the PSTCA, 'willful misconduct' has the same meaning as the term 'intentional tort.'" *Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 460 (M.D. Pa. 2007) (quoting *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995)), *on reconsideration*, No. CIV.A. 3:06-CV-01898,

---

[12] Section 8542(b) waives immunity for vehicle liability, liability arising from the care, custody, or control of personal property in the possession of a municipality, real property owned or in the possession of a municipality, trees, traffic controls and street lighting, utility service facilities, streets, sidewalks, animals, and liability arising from sexual abuse.

2007 WL 2844428 (M.D. Pa. Sept. 26, 2007); *La Plant v. Frazier*, 564 F. Supp. 1095, 1098-99 (E.D. Pa. 1983) (observing that the PSTCA "only appears to contemplate liability for intentional torts"). Therefore, by definition, mere negligence is insufficient to invoke individual-municipal official liability under the PSTCA. To the extent Plaintiffs attempt to assert a claim of negligence against individual Defendants John Price or John Bast as officials of the City, such a claim fails as a matter of law.

### 2. *Tortious Interference with Contractual Relations*

Plaintiffs' tortious interference claim fares no better than their negligence claim. As with claims for negligence, the PSTCA confers immunity on local governments from claims of tortious interference with contractual relations. *See Indira*, 2015 WL 1637151, at *11; *E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 502 n.9 (E.D. Pa. 2019); *Egli v. Strimel*, No. CV 14-6204, 2015 WL 5093048, at *6 (E.D. Pa. Aug. 28, 2015) (noting that a local township was "immune from intentional tort claims pursuant to the [PSTCA]"). Plaintiffs' claim for tortious interference as to the City fails as a result.

Nor are there any allegations—and the facts do not support—that either of the individual Defendants, John Price or John Bast, engaged in "willful misconduct" that would waive their immunity under Sections 8545 and 8550 the PSTCA.[13] *See Grau v. New Kensington Arnold Sch. Dist.*, 429 F. App'x 169, 173 (3d Cir. 2011) (finding a failure to plead "willful misconduct" under 42 PA. CONS. STAT. § 8550 where there were no allegations that gave rise to a plausible inference that defendants "desired" to cause injury or were aware that such injury was "substantially certain to follow, so that desire can be implied" from their conduct); *compare*

---

[13] Indeed, the Court sees no reference to "John Bast" outside the caption of the Amended Complaint.

11
020420

*Walker v. N. Wales Borough*, 395 F. Supp. 2d 219, 231 (E.D. Pa. 2005) (finding allegations sufficient to plead willful misconduct). Any claim for tortious interference Plaintiffs attempt to assert against the individual Defendants must therefore fail.

The PSTCA does not, however, immunize local agencies against *constitutional* torts, which are brought pursuant to 42 U.S.C. § 1983. *Thomas v. Cty. of Chester, Pocopson Home*, 312 F. Supp. 3d 448, 453 n.26 (E.D. Pa. 2018) ("[T]he PSTCA does not affect § 1983 claims."). The Court therefore addresses the viability of Plaintiffs' claims for violation of their rights to substantive and procedural due process—the only claims Plaintiffs were given leave to re-plead.

### B. Plaintiffs' Constitutional Claims: Substantive and Procedural Due Process

As a threshold matter, the Court assumes that Plaintiffs assert their claims for violation of their constitutional due process rights pursuant to 42 U.S.C. § 1983.[14] Section 1983 is a mechanism for the redress of deprivations of substantive constitutional and statutory rights by individuals acting under the imprimatur of state law.[15] However, the Amended Complaint fails

---

[14] Unlike the initial Complaint, the Amended Complaint is silent on this point.
[15] Title 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "is not itself a source of substantive rights"; rather, the statute is a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (explaining that Section 1983 "is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws'" (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4-6 (1980))); *see Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 422 (3d Cir. 2004)

to adequately allege an underlying constitutional cause of action for either deprivation of Plaintiffs' substantive or procedural due process rights.[16] Consequently, whether brought pursuant to Section 1983 or some other right of action, these claims fail.

### 1. *Violation of Substantive Due Process*

#### a. **Legal Principles**

A claim alleging a violation of the right to "substantive due process" against a state or local government entity implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The substantive component of the Due Process Clause protects fundamental liberty and property interests "against certain government actions regardless of the fairness of the procedures used to implement them.'" *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992)); *Perano v. Twp. of Tilden*, No. CIV.A.09-00754, 2010 WL 1462367, at *7 (E.D. Pa. Apr. 12, 2010), *aff'd*, 423 F. App'x 234 (3d Cir. 2011). To plead a claim alleging a violation of the right to substantive due process as guaranteed by the Fourteenth Amendment, one must satisfy the "shocks-the-conscience" standard. As the Third Circuit has explained, "[t]he substantive component of the due process clause is violated by [state conduct] when it can

---

("Once the plaintiff establishes the existence of a federal right, there arises a rebuttable presumption that the right is enforceable through the remedy of § 1983.").

[16] Although the Court does not reach the issue because Plaintiffs have failed to state the underlying constitutional claims, it is worth noting that even if they had adequately pleaded constitutional deprivations, for Section 1983 liability to attach to the City (including the individual Defendants in their official capacities), Plaintiffs would need to plausibly allege that these constitutional deprivations were the result of the City's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Harris v. City of Philadelphia*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). A City policy or custom— as opposed to the independent conduct of a City official—would need to be the "driving force" behind the alleged constitutional harm. *Weston v. City of Philadelphia*, 82 F. Supp. 3d 637, 649 (E.D. Pa. 2015).

properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Gottlieb*, 272 F.3d at 172 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Gottlieb*, 272 F.3d at 172 (quoting *Lewis*, 523 U.S. at 849); *see Andrews v. Monroe Cty. Transit Auth.*, 523 F. App'x 889, 892 (3d Cir. 2013) (applying the shocks-the-conscious standard); *Faylor v. Szupper*, 411 F. App'x 525, 530 (3d Cir. 2011) ("There are no allegations of corruption, self-dealing, interference with constitutionally protected activity, or other conduct on behalf of any of the defendants egregious enough to be cognizable as a violation of substantive due process."). In the context of land-use disputes, a plaintiff must allege that "(1) he has a property interest protected by the Fourteenth Amendment,[17] and (2) he was deprived of that interest by local officials' behavior that shocks the conscience." *Perano*, 2010 WL 1462367, at *7 (citing *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir. 2008)).

### b.  Application to the Amended Complaint

The Amended Complaint—like the initial Complaint—satisfies the first requirement of the applicable standard: Plaintiffs adequately plead a property interest protected by the Fourteenth Amendment. However, the Amended Complaint—also like the initial Complaint—fails to satisfy the second requirement of the standard: Plaintiffs fail to plead conduct depriving

---

[17]  "[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process," *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440 (E.D. Pa. 2011) (quoting *Reich v. Beharry,* 883 F.2d 239, 244 (3d Cir. 1989), *aff'd*, 476 F. App'x 282 (3d Cir. 2012); rather, "for a property interest to be protected for purposes of *substantive due process,* it must be 'fundamental' under the United States Constitution." *MFS, Inc.*, 771 F. Supp. 2d at 440 (emphasis in original) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006)).

them of their property interest that "shocks the conscience." As to the first requirement, Plaintiffs state that they own rental property at 723 Washington St. in the City of Easton, *see* Am. Compl., Count III ¶ A, and "[t]he Third Circuit has stated that 'ownership is a property interest worthy of substantive due process protection.'" *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440 (E.D. Pa. 2011) (quoting *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)). However, they have not articulated— nor are there any allegations in the Amended Complaint from which to infer—how any of the Defendants' conduct deprived Plaintiffs of their ownership interest in a way that shocks the conscience.

The most that can be said for the Amended Complaint is it alleges that (a) a change in political administrations led to a negligent oversight (that is, a failure to recognize that an informal agreement existed concerning Plaintiffs' installation of a fire alarm system), which caused harm to the Plaintiffs, or, perhaps more plausibly, (b) members of the new administration willingly chose to disregard any "agreement" Plaintiffs may have had with the City in the interest of enforcing all applicable municipal codes against Plaintiffs and their property. While an oversight resulting in a failure to honor a previous informal "agreement" with City officials is certainly not behavior that "shocks the conscience," neither is a deliberate decision to more strictly enforce City Code provisions applicable to Plaintiffs' property, even if it results in harm. *See Kapish v. Advanced Code Grp.*, No. 3:15-CV-278, 2015 WL 5124143, at *5 (M.D. Pa. Sept. 1, 2015) (finding allegations of defendants' application of stricter interpretations of the building code, which delayed plaintiff's project for several months and required additional expenditures to bring the project up to code, did not "shock the conscience"); *Eichenlaub v. Twp. of Indiana*,

385 F.3d 274, 286 (3d Cir. 2004) (finding allegations "that zoning officials applied subdivision requirements to [plaintiffs'] property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the [plaintiffs] did not rise to the level of a violation of substantive due process"). Choosing to enforce all applicable Fire Code provisions as to Plaintiffs' property is not "conduct intended to injure in some way unjustifiable by any government interest," *Gottlieb*, 272 F.3d at 172 (quoting *Lewis*, 523 U.S. at 849)—indeed, the City's interest in enforcing the Fire Code is self-evident.

"The 'shocks the conscience' standard encompasses 'only the most egregious official conduct.'" *United Artists Theatre Circuit, Inc.*, 316 F.3d at 400 (quoting *Lewis*, 523 U.S. at 846). Because the Amended Complaint fails to allege that Plaintiffs were deprived of a fundamental property right by conduct of the Defendants that is sufficiently egregious to "shock the conscious"—or, indeed, by conduct that is in *any* way egregious—their substantive due process claim must fail.

### 2. *Violation of Procedural Due Process*

#### a. **Legal Principles**

A claim alleging a violation of the right to "procedural due process" against a state or local government also implicates the Due Process Clause of the Fourteenth Amendment. To state such a claim, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Clark v. Coupe*, 632 F. App'x 85, 86 (3d Cir. 2016) (quoting *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d

Cir. 2006)).  A necessary corollary to this standard is that "to state a claim for failure to provide [procedural] due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  Framed differently, "[a] due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'"  *Id*. (quoting  *Zinermon v. Burch,* 494 U.S. 113, 126 (1990)).  "A state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body."  *Hayward v. Borough of Sharon Hill*, No. CIV.A. 13-825, 2013 WL 5777293, at *4 (E.D. Pa. Oct. 25, 2013) (quoting *Desi'z Pizza, Inc. v. City of Wilkes–Barre,* No. 01–480, 2006 WL 2460881, at *17 (M.D. Pa. Aug. 23, 2006)); *see DeBlasio,* 53 F.3d at 597.

      b.  **Application to the Amended Complaint**

  As with their claim for violation of substantive due process, Plaintiffs' claim for violation of procedural process surmounts the first of two hurdles:  Plaintiffs adequately allege they have a property interest cognizable under the Fourteenth Amendment.  *See Perano*, 2010 WL 1462367, at *6 (observing that, in the context of a procedural due process claim, "[p]laintiff's protected property interest in his land is not disputed by Defendants").  However, Plaintiffs fail to surmount a second hurdle:  the Amended Complaint fails to allege that Plaintiffs were deprived of that property interest *without due process of law*.  Fatal to their claim is the absence of any allegation that they attempted to use available procedures to seek relief from the City's conduct.  There is simply nothing in the Amended Complaint stating that Plaintiffs did anything more than attempt to rely on the terms of a previous, informal oral agreement with Inspector Foulk.  The

17
020420

"Conclusion" section of the Amended Complaint makes this clear. There, Plaintiffs state as follows:

> In summary, a new City of Easton Fire Marshall "jumped the gun" and interfered with the gradual process of installing a fire alarm system . . . where Plaintiff[s] w[ere] soon to be coming out of bankruptcy and needed the extra time originally allowed in the oral agreement by Fire Inspector Foulk.

Am. Compl. at 3. There is no mention here or anywhere else of attempts to use existing procedural mechanisms to either enforce the previous agreement with Inspector Foulk, appeal the City's decision to notice Plaintiffs for a violation and force the vacatur of their property, or otherwise challenge the City's conduct.

While Defendants point to the procedural mechanisms of redress available to landowners under the City Code with respect to their property, *see* Defs.' Mem., ECF No. 18-1, at 13, and while the Court may take judicial notice of the referenced Code sections in evaluation of the Amended Complaint, this is unnecessary. Plaintiffs have failed to allege that they attempted to take advantage of the City's formal procedural mechanisms to dispute or challenge the City's actions, or that these mechanisms were unavailable, and as such, their procedural due process claim fails. *Alvin*, 227 F.3d at 116 ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.").

### C. Leave to Re-Plead

The Court is obliged to consider whether to grant Plaintiffs leave to re-plead some or all of their claims. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007) ("Generally, a plaintiff will be given the opportunity to amend her complaint when there is an asserted defense of failure to state a claim."). Although leave to amend pleadings, when not as of right, should be "freely give[n] when justice so requires," FED. R. CIV. P. 15(a)(2), the denial of leave to amend is

appropriate where there exists undue delay, bad faith, dilatory motive, or futility. *See Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008).

Here, the Court finds that allowing Plaintiffs to re-plead would be futile. They have had two opportunities to plead their claims, claims that have now been twice adjudicated non-viable. Importantly, Plaintiffs' state law claims do not suffer from any factual deficiencies—they are legally deficient. The City is immune from claims sounding in state tort law under the PSTCA. However, even with respect to Plaintiffs' constitutional claims, there is no indication that another opportunity to plead adequate facts would result in the statement of any legally viable claims—their allegations are and likely will remain deficient. The Court is left to conclude that there exist no facts Plaintiffs could allege that would state the causes of action they seek to assert. Therefore, in light of the fact that Plaintiffs have had an opportunity to amend once before and their claims remain both legally and factually deficient, the futility of successive pleading obliges the Court to deny Plaintiffs an additional opportunity to amend the Complaint. *See Kanter*, 489 F.3d at 181 ("Where an amended pleading would be futile, that alone is sufficient ground to deny leave to amend.").

    **D.**    **Plaintiffs' Request for Additional Time to Retain Counsel**

Finally, the Court notes that in the Amended Complaint, Plaintiffs ask "for 60 days to find Counsel if there are further court filings to be made." Am. Compl. at 3. As the Court has found the Amended Complaint insufficient to state any of the claims it purports to assert, and as further pleading would be futile, there are no further filings to be made in this case, and Plaintiffs' request is therefore moot.

19
020420

## V. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted. The Amended Complaint is dismissed, with prejudice. A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge